Thank you, Your Honor. May it please the Court, Robert Wright of Horvitz & Levy, for defendants and appellants, the Binafards. This case involves the tort of bad-faith waste. The tort is an exception to the non-recourse liability that ordinarily protects mortgagors in the event of a default. And that's a statutory exemption. The exception for bad-faith waste was actually recognized by the California Supreme Court in the matter of Cornelison v. Kornbluth. And the fundamental issue in this case is whether this exception to non-recourse liability should be confined to its traditional parameters or, as D.A.N. JT. VENTURE apparently contends, as the appellee contends, expanded to impose greater liability on all mortgagors. And the tort in this case was expanded beyond its traditional parameters in three ways. First, liability was imposed despite a general release. And here, the Binafards obtained a note secured by a deed of trust on the jewelry center, which is a 12-story building constructed in the 1920s with a mixture of manufacturing and … I've been there. You know, it's right downtown, right? Yes, Your Honor. It's right downtown. We've all been there. Right. At one moment or another. Yes, Your Honor. And … Yeah, that's before my time. When the note was in arrears, the Cato Company, which is D.A.N. JT. VENTURE's servicing agent, purchased the note at a discount, then assigned that note to D.A.N. JT. VENTURE. D.A.N. JT. VENTURE then foreclosed on the jewelry center and sued the Binafards for bad faith waste. But the note and deed of trust release that bad faith waste claim. They do … Did you raise this issue in the district court? Yes, Your Honor. When? This issue was raised in the district court. And is there a ruling by the district court? And the issue was raised in the district court in a summary judgment motion before the first appeal. The district court granted that summary judgment motion on other grounds and did not address the issue of the release. So when you went back, we reversed that grant of summary judgment, said there was a tribal issue of fact. And when you got back there, did you raise it again with the district court? No, Your Honor. Why not? The record doesn't fully reflect that. The issue was raised in the summary judgment motion. No, no, no. That's not my question. I understand that. When I went back. My question is, when I went back, did you raise it? And if not, why not? The issue was not raised after this court reversed the initial grant of summary judgment. Then why should we deal with this issue on appeal? As I recall, D.A.N. JT. VENTURE, when you got back, there was a little more work on the case, I guess, for discovery and complete all the work and all the trial preparation. The court held a pretrial conference order. And, you know, the process in the district court for a pretrial conference order, you get to list the issues that need to be tried. Defenses, whatever it might be. The judges, we're all district court trial judges. And, you know, tell me what we're going to try. Yes, Your Honor. What is it? And I looked carefully over the pretrial conference order, and I didn't see this issue in there. Goes to trial on the facts. You know, they have a lengthy trial, a pretty complex trial. Then there's motions for judgment notwithstanding the verdict on various grounds. Motions for a new trial. This isn't raised at either point. Yes, Your Honor. Now you want to – that's a central part of your brief on appeal. Yes, Your Honor. It is. So why should we – why should we reach it? I mean, the district court might have liked to have ruled on this. Maybe it would have informed our approach to it. If this Court finds that the presentation of the issue in the district court was not sufficient to preserve it for appeal, this Court still has the discretion to consider the issue. It is an issue of law. It is based on undisputed facts. The note and deed of trust on which this issue is based are in the evidence. The issue was briefed in the district court. And the district court did not rule on the issue, but it was briefed on the district court. The issue has been briefed here. And finally, this is an important issue that affects public policy because it is – And why didn't you raise it in the trial court if it was so important? Why didn't you, you know, ask the trial – at some point, any time. Motion for judgment notwithstanding the – motion for judgment as a matter of law after the verdict is in. Judge, guess what? This is all barred. Because I was not counsel in the trial court, Your Honor, I would be speculating. I do know the issue was raised before the first appeal. I do know the district court granted that motion in which it was raised on other grounds. But I don't want to speculate about what's not in the record. All right. Why don't you go on. Yes, Your Honor. I can – Can I ask you just a simple question? Yes. How much money did the Beneforts end up with in their pocket on this deal? There's not a simple answer to that question. They got $8 million and there's some odd dollars, right? And then they put another mortgage on the property, another trustee, another 4.1. And then they kept the rents for a long time, right? Then you got the rent, right? Yes, Your Honor, there was rent. So what's all that add up to? Well, Your Honor, there was evidence that the Beneforts invested between $4.7 and $5.2 million in the Jewelry Center and withdrew a total of $9.9 million. Now, this withdrawal includes the amount of the second deed of trust, which was approximately $4 million of that amount. They lost that. Yes, Your Honor. So then what did they end up with, $5 million? Well, Your Honor, including that second note of deed of trust, there was evidence that the Beneforts withdrew $5.2 million from this property, if you include that second deed of trust. The Beneforts then invested approximately $6 million in another building, and they did so while the real estate market was still strong. When the real estate market collapsed, they lost that investment in the other building. So of the $5.2 million that you could say they withdrew from this Jewelry Center investment, they lost $6 million in this other building that they purchased. And that evidence goes to the issue of the defense of economic necessity. However, the trial court excluded the evidence that they lost the $6 million investment in this other building, although the Beneforts offered that evidence for the purpose of showing they lacked the financial resources to continue maintaining the Jewelry Center once they lost this other investment. Yeah, but they were getting rent out of it all the time. How much were they getting every month, $70,000? Or is that what's figured? I don't have the precise figure before me, Your Honor. They were getting a lot of money. The amount of rent did vary during the period. And an established offense to bad faith waste is the inability to make ends meet financially. And prior to the first appeal — Don't you have to look at the building itself? You got the money coming out of the building? I mean, let's say you took the money and you went to Las Vegas. God, I hate to use that example. You went down to the Indian Casino, huh? And you lost the money. Is that a defense? Well, Your Honor, that would ultimately be a question for the jury to decide. And the jury was not allowed to consider the totality of that defense because it was not given the evidence that the Benefards lost the $6 million investment in another building. Let's get back to the issue of whether or not, you know, the non-recourse provision in the note applies to the statutory claim of waste, right? Is that sort of the heart of your appeal? That is the first issue in the brief, Your Honor. And, yes, allow me to address that, please. The note in deed of trust released the bad faith waste claim. They do so because the note in deed of trust provide that they release any claim, any damages claim based on the provisions and the agreements in the deed of trust. And one of those agreements in the deed of trust was that the Benefards would maintain the Jewelry Center in good repair. And that is the basis of Dan's bad faith waste claim. It goes further than that, though, doesn't it? The bad faith waste claim goes further than that, but an essential element of the bad faith waste claim is that the Benefards allegedly failed to maintain the Jewelry Center in good repair. But your contention is that the clause in the note in the deed of trust, that it constitutes a waiver of their right to bring a suit for bad faith waste. Yes, Your Honor. Intentional, knowing, you know, there's an element of intent that's involved. Yes, Your Honor. And Dan argues that they just didn't simply have a claim for weight, for failure to maintain the property. Their claim was for bad faith waste, Your Honor. That's correct. Isn't that different? It has the additional element of bad faith, and so in that sense it is different. Why does the clause – what is it about the language of the clause? What is it, 44? In the deed of trust or wherever it is? Yes, sir. It's both in the deed of trust and in the note. In the note it's at clause 14. Yeah, 14. I'm sorry. Which is at page 27. So which is the language in here that you contend constitutes a waiver of their right to maintain a claim for bad faith waste? The language is that the payee shall look solely to the property, the leases, and any other collateral now or hereafter constituting security for this note, for the payment of this note, or for the performance of any of the agreements – I'll omit language – in the deed of trust, and then skipping down about four lines, nor shall any deficiency judgment be sought, obtained, or enforced for the satisfaction of the remedies of the payee – and I'll skip a little bit – or for the performance of any of the agreements, obligations, covenants, or warranties contained herein or therein, which refers to the deed of trust. And then looking at the deed of trust at page – at clause 8 in the deed of trust, which is at page 36 of the excerpts of record, that provides that trustor – I'm sorry. Page what? At page 36. Okay. Go ahead. In clause 8 at the top, it provides trustor shall cause the property to be maintained in a good and safe condition and repair, and further down it provides that the trustor shall promptly repair, replace, or rebuild any part of the property which may be destroyed by any casualty or become damaged, worn, or dilapidated. Okay. And Dan's essential – That should – those clauses that you just – that text. Yes, Your Honor. We should interpret to mean that that constitutes a waiver. How about – Yes, Your Honor. How about paragraphs 19B and 19B-5 of the first deed of trust? Paragraph 19B, Your Honor? Yes. It says, Banshee, I have a right to exercise any and all rights and remedies available at law and in equity, including without limitation the following. Exercise all other rights and remedies provided herein in the note or any other security documents or provided by law. And then you go down and you look at – well, and there's a paragraph 25. It says, No remedy herein conferred upon or reserved to Dan is intended to be exclusive of any other remedy contained herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. And then you've got the statute, huh? And what does the statute say? Well, the statute ordinarily provides for nonrecourse provisions. The exception to that statute is recognized by case law. What about waste? I believe the primary statutory authority are Sections 580B and 580D of the Code of Civil Procedure, which the California Supreme Court in the Cornellison v. Kornbloth decision construed. And further, the Court construed Section 2929 of the Civil Code providing, quote, Waste, no person whose interest is subject to the lien of a mortgage may do any act which will substantially impair the mortgagee's security. And then the California Supreme Court in Cornellison had to reconcile that provision with their language of Sections 580B and 580D of the Code of Civil Procedure. And how did they reconcile that? They reconciled that, Your Honor, to find that a nonrecourse note ordinarily does not bar a claim for bad faith waste. Do they use the words nonrecourse in Cornellison? I believe they do, Your Honor. Let me find it. It says, you know, Cornellison held that California anti-deficiency judgment statutes bar recovery for waste against a trustor following a nonjudicial foreclosure sale when the waste actually results from the depressed condition of the general real estate market, but not when the waste is caused by the bad faith acts of the trustor debtor. That's what you had here. Yes, Your Honor. Bad faith waste. And that's what the jury found. In the decision Inree Mills, Your Honor. Isn't that what the jury found? The jury found bad faith waste. Yes, Your Honor. And in the decision Inree Mills, and this goes back to the issue of the defense of economic necessity, the Ninth Circuit clearly held that a defense to bad faith waste is the inability to make ends meet financially. And consequently, the Benafards sought to present evidence that they were unable to maintain the Jewelry Center because they lost their $6 million investment in another property. This was evidence that was so important because it was critical to this defense of economic necessity that this Ninth Circuit recognized in Inree Mills, because evidence that the Benafards lost a $6 million investment in another property would have supported their argument that they were unable to maintain the Jewelry Center because they lacked sufficient funds to do so. They got about $1.8 million in rents, right? Is that right? They got the rents. They kept the rents. They didn't make any payments. I believe that number is in the... They had money to maintain the property, but they used it for other ventures. Yes. Yes, Your Honor. They did. They did obtain rents from the Jewelry Center. They did use those for this other venture. And the question is, is the jury going to be allowed to determine whether there was bad faith in this case if the Benafards can present evidence that they reasonably thought that they could maintain both investments, but then they failed to anticipate that the real estate market was going to collapse, that the rents were going to come down, and that they failed to anticipate these economic conditions at the time that they... But while this was going on, they were milking the property. They were taking the rents and not making the payments and having a jolly time with somebody else's money, huh? Good faith, is it? While this was going on, the Benafards were receiving rents, but they had also invested the $6 million in another building and were losing that money. So the question is whether the jury can consider both sides of the story. They were getting the rents, but they weren't maintaining the building. They weren't making the payments on the note, right? Is that right? Yes, Your Honor. You are correct that they were not making the payments on the note. They were taking the money. And Dan Joint Venture's argument to the jury was that the Benafards failed to make approximately $4 million in necessary repairs in this building. And so... What was the jury award? The jury award was approximately $2.8 million. Okay. And Dan argued that the Benafards clearly had the resources to make these repairs because they withdrew approximately $10 million from this building. But in fact, if the jury had been allowed to consider that $6 million was lost on another investment and that the total withdrawal was actually not the $9.9 million because that fails to take into account the initial investment that Benafards made in the building, but was actually $5.2 million, then the jury could have considered in the whole scheme of things whether there was bad faith shown, because that is the element here. It's not just waste, but bad faith, whether bad faith was shown under these circumstances with the Benafards who lost $6 million. And if I may address on the issue of the release, I'm sorry. You've only got 33 seconds. Yes, Your Honor. If I may address on the initial issue of the release, Dan's argument is that this release only extends to contract claims and not to tort claims or statutory claims, but the release in the note contains an express exception for fraud, for misrepresentation and breach of trust. These are tort claims. This was the issue that wasn't raised when the case was sent back. This is the issue that was not raised when the case was sent back, and it is an issue that this Court can consider for the first time on appeal. And there would be no ---- How long did the jury try, by the way? It was between one and two weeks. I forget now. And there would be no reason for this express exception for these torts and these provisions codified in statute such as fraud if, in fact, the release did not extend to other torts such as bad faith waste for which there was no express exception. Thank you, Your Honor. Good morning. May it please the Court, my name is Gary Barr. I represent the appellee, Dan Joint-Venture. I will address the issues that were raised by the Court specifically. Obviously, the appellees agree that the ---- and contend that the issue of what the appellants call the release language, which is really a nonrecourse provision, was waived by the failure to include it in the pretrial conference order or giving the lower court, the district court, any opportunity to decide that issue. It's not in any of the pleadings. There's nothing in the record that would indicate that. Why doesn't it fit within the exception that, you know, we can consider it because, one, you know, it's a question of law, really, and number two, there are no disputed issues of fact needed to be resolved to reach that issue. Well, I do believe, Your Honor, that it's in the interest of justice. Your Honor, I believe that it is not strictly an issue of law, and there are a couple of reasons for that. Whenever you're going to look at this contract, as we heard, there are some exceptions like fraud, breach of trust, which are included in the exception to the nonrecourse provision. So then we would have to look at the intent of the parties when this contract was first entered into. For example, as raised in the reply brief, there's the choice of law issue, which hasn't been argued today, which there's a bold statement that it's mechanistic that you would decide that choice of law, when, in fact, the Medloy case, which was cited in the reply brief, sets down specific factual analysis that needs to be determined before you can determine whether or not which choice of law should whether the choice of law provision should govern. Similarly, with regard to the issue of Isn't the simple answer to that, since it wasn't raised, we automatically apply the law of reform? Yes, Your Honor. And, in fact, even the appellants throughout the district court case only argued California law. And so my point of view was more of a by way of an example. Similarly, with the nonrecourse provision, the nonrecourse provision, which is very complex, as Judge Pragerson pointed to, other provisions in the deed of trust, which seem to allow statutory allegations, statutory claims. Bad faith waste is a statutory claim. It's under 2029 of the Civil Code. All Cornelius and the Supreme Court did in Cornelius is reconcile 2029 with the anti-deficiency statute to add this burden of bad faith. So, therefore, it really is a factual, or at least partly a factual determination, which, therefore, should have been decided from in the district court. And this court is appellee's contention that this court should decline hearing it and deciding it in this case. If the court wishes to hear, because there was some questioning about that, the language of the agreements themselves are very telling. In that the provisions that are in the note in the deed of trust, the nonrecourse provisions, talk about obligations of this agreement and the commensurate agreement. So the note refers to the deed of trust and the deed of trust refers to the note. It does not refer to other claims. And the Supreme Court, again in Cornelius, has obviously found this overriding policy of mortgagors should not, or trustors should not be allowed to despoil the property in bad faith. This was confirmed both in the Nippon case, which we have cited, in which there was a nonrecourse provision and the Court of Appeal, the California Court of Appeal, indicated that there's still a claim for bad faith waste. In the Jaffe-Spindler case, the same thing. And as for the Mills case, the Mills case is very unique on its facts. The Mills case, the owners of the property had only held the property for a few months. That's very different than the situation, and this court actually found that to be a significant factor. In this case, the owners of the property had held it for over eight years. And as a result, had all this time, and in fact, in our brief, is a chart on page, I believe, it's 24. I believe, of course, the exact page number I tabbed it. Yes, page 24, which is cited to the record. Year by year, the evidence that was presented at trial with regard to the money that was taken out each year, which did total slightly over $9.9 million in the period between 1986 and 1994. Therefore, this case is much more akin to Nippon and the Jaffe case where there was long-term holding. With regard to the evidence regarding the loss of the other building, this case is about what happened at this building, the Jewelry Center building. The appellants took out the $9.9 million. The jury found that that was in bad faith. The evidence was overwhelming that the building had deteriorated, and the jury found that, in fact, it had deteriorated, and there was the money there to have fixed the building or maintain the building, but instead they took it out. What they did with the money, aside from the what they did with the building, is really irrelevant, which is what the Court found. If there are no further questions, I will submit. Thank you very much. Do you want to say anything? I'll give you a minute for rebuttal. Thank you, Your Honor. I just want to correct one thing. I did say that I thought that the Cornelison v. Cornblock case did use the term nonrecourse. I believe it's simply later authorities have come to describe that concept as nonrecourse, but that term I did not see in the Cornelison case. Thank you, Your Honor. Thank you very much. And the matter will stand submitted, and this Court will recess until 9 a.m. tomorrow morning. All rise. This Court for this session stands adjourned.
judges: Pregerson, Tashima, Paez